# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| MARA MANCINI and KYSON CLARK, by his next friend and father, CLYDE CLARK, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF INDIANAPOLIS, INDIANAPOLIS METROPOLITAN POLICE DEPARTMENT ("IMPD") and in their official and individual capacities the following IMPD officers: RICK HITE, TROY RIGGS, CRAIG HEDDEN, DOUGLAS HIMMEL, JASON NORMENT, KRISTOPHER KUNZ, GLEN GEISSER, DEBRA DOTSON, CONRAD SIMPSON, GREGORY STEWART, KEITH SHELTON, CHARLES WHEELER, JOHN MONTGOMERY, JUSTIN MUSSER, CHARLES TICE, LONA DOUGLAS, MELISSA LEMRICK, JON KING, JEFFERY NEWLIN, CLAYTON PORTELL, JEREMY GRAY, DAVID KINSEY; and DOES 1-50, and ROE CORPORATIONS 1-10, inclusive, <br><br> Defendants. | CAUSE NO.: 1:16-cv-2048 <br><br><br><br> **COMPLAINT & JURY DEMAND** |

## COMPLAINT FOR DAMAGES AND REQUEST FOR JURY TRIAL

Plaintiffs Mara Mancini and Kyson Clark, by undersigned counsel, hereby set forth the following complaint against Defendants:

## PARTIES

1. Plaintiff Mara Mancini ("Ms. Mancini") is a resident of Marion County, Indiana, and is a citizen of the United States. Plaintiff is 20 years old. She currently resides at 325 North Addison Street, Indianapolis, Indiana 46222.

1

2. Plaintiff Kyson Clark ("Kyson") is a resident of Marion County, Indiana, and is a citizen of the United States. Plaintiff is a minor child and is represented by his father Clyde Clark ("Mr. Clark"). They reside at 325 North Addison Street, Indianapolis, Indiana 46222.

3. Defendant City of Indianapolis (the "City") oversees the Indianapolis Metropolitan Area through its agent, the Indianapolis Metropolitan Police Department ("IMPD"), which is a police force located in Marion County, Indiana, with all of the rights and authority set forth by the State of Indiana.

4. At the time of the incident that gave rise to the Complaint, the Chief of the IMPD was Rick Hite. Mr. Hite is now retired from the IMPD.

5. The present Chief of the IMPD, Troy Riggs, was appointed on January 1, 2016.

6. To the extent required, Plaintiffs name separately the Indianapolis Metropolitan Police Department Officers in their official and individual capacities. Those individuals are: Sergeant Craig Hedden, Officer Douglas Himmel, Officer Jason Norment, Officer Kristopher Kunz, Officer Glen Geisser, Officer Debra Dotson, Officer Conrad Simpson, Officer Gregory Stewart, Officer Keith Shelton, Sergeant Charles Wheeler, Officer John Montgomery, Officer Justin Musser, Sergeant Charles Tice, Officer Lona Douglas, Officer Melissa Lemrick, Officer Jon King, Officer Jeffery Newlin, Officer Clayton Portell, Officer Jeremy Gray, and Sergeant David Kinsey.

7. All individually named defendants and Doe defendants were working as law enforcement officers on July 16, 2015.

8. All Defendants can be served at the City County Building, 200 East Washington Street, Room 1601, Indianapolis, Indiana 46204.

9. At this time, Plaintiffs are unaware of the true names and capacities of the Doe Defendants within the circumstances relating to the facts of the above captioned matter. Plaintiffs will seek leave of the Court to amend this Complaint when they identify the individual Defendants through discovery.

10. At this time, Plaintiffs are unaware of the true names and capacities of Roe Corporations within the circumstances relating to the facts of the above captioned matter. Plaintiffs will seek leave of the Court to amend this Complaint when they identify the individual Defendants through discovery.

## JURISDICTION AND VENUE

11. Defendant City oversees law enforcement and public properties in Indianapolis, Indiana, including the Indianapolis Metropolitan Police Department

12. All Defendants are based exclusively in Marion County, Indiana

13. All events at issue in this case occurred in Marion County.

14. This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1343.  This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988.

15. Subject matter jurisdiction over supplemental state law claims is predicated on 28 U.S.C. § 1367 and Article 3 of the United States Constitution.  The pendent state law claims contained in this Complaint arise from the same nucleus of operative facts, and involve identical issues of fact and law such that the entire action constitutes a single case appropriate for prosecution as a single proceeding.

16. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2).

17. On or about September 4, 2015, and again on December 31, 2015, Plaintiffs sent a written tort claims notice to Defendants pursuant to Ind. Code § 34-13-3-8.  At the date of filing

this Complaint, Plaintiffs have not received a response from the Defendants regarding their claims. This Complaint is thus timely and properly commenced on all federal and state law claims pursuant to applicable provisions of the Government Code.

## **FACTUAL ALLEGATIONS**

18. On July 16, 2015, Ms. Mancini was seven months pregnant with her son.

19. At this time Ms. Mancini was visibly pregnant.

20. On or about 10:30 p.m. on July 16, 2015, Ms. Mancini heard her dogs barking and general commotion outside of her home at 325 N. Addison Street.

21. Ms. Mancini approached the front door of her home to see what was causing the disturbance.

22. Ms. Mancini stepped out of her front door and was immediately attacked by an IMPD canine who was inside the fenced yard.

23. The IMPD was in the area of Ms. Mancini's home searching for a suspect, Dequarius Walker, who had fled a traffic stop.

24. An unknown IMPD officer released the IMPD canine during the pursuant of Mr. Walker.

25. Mr. Walker was arrested and charged with Resisting Law Enforcement, 35-44.1-3-1(a)(3)/MA. *See Exhibit A, Case Summary of Dequarius Walker.*

26. The suspect was not found on Ms. Mancini's property.

27. The IMPD canine dragged Ms. Mancini to the ground and mauled her.

28. The IMPD canine unit bit Ms. Mancini's elbow, tearing her flesh open.

29. The IMPD canine bit into Ms. Mancini's right arm leaving puncture marks.

30. The IMPD canine bit and tore into Ms. Mancini's right thigh.

31. Ms. Mancini sustained several puncture wounds as result of being mauled by the IMPD canine.

32. An unknown IMPD Officer attempted to gain control of the IMPD canine and was also attacked and injured.

33. An unknown IMPD Officer was finally able to free Ms. Mancini from the IMPD canine.

34. Ms. Mancini was left visibly pregnant and bleeding on the ground.

35. When emergency medical technicians arrived on the scene, the injured IMPD Officer was treated first.

36. Ms. Mancini was eventually taken to the emergency room at IU Methodist Hospital downtown Indianapolis.

37. Upon arrival at the hospital, Ms. Mancini was rushed for X-rays to determine if she had any broken bones.

38. After the X-rays, Ms. Mancini was informed she wound require immediate surgery because of the injuries caused by the IMPD canine.

39. On July 17, 2015, at approximately 7:30 a.m., Ms. Mancini entered surgery to clean and close the severe wounds caused by the IMPD canine.

40. Ms. Mancini began to experience contractions while in surgery.

41. An OB/GYN was called to observe Ms. Mancini during the surgery due to concerns of a premature birth of Kyson.

42. On July 17, 2015, at approximately 2:30 p.m., Ms. Mancini was discharged from IU Methodist.

43. Over the next few weeks the wounds on Ms. Mancini's thigh became severely infected.

44. On or about August 13, 2015, Ms. Mancini underwent another emergency surgery to treat her infected leg.

45. The extent of Ms. Mancini's infection was such that a golf ball-sized mass was removed from her thigh.

46. During this time, Ms. Mancini was prescribed medication to address the extreme pain she was suffering as well as the infection.

47. On or about August 16, 2015, Ms. Mancini went into premature labor.

48. The premature labor was attributable to the extreme stress of Ms. Mancini's injuries and infection.

49. Kyson Clark was born on August 17, 2015.

50. Kyson was born at least one month early.

51. Kyson was born addicted to narcotics.

52. Kyson's addiction was the result of the pain medication Ms. Mancini had been prescribed as a result of the IMPD canine attack and/or subsequent surgeries.

53. Kyson was born with signs of the same infection his mother had sustained as a result of the IMPD canine attack.

54. Kyson spent the first weeks of his life in the Neonatal Intensive Care Unit ("NICU") at IU Methodist Hospital.

55. Ms. Mancini was required to leave the wound on her leg open while it healed over the next six weeks.

56. Ms. Mancini was required to wear a fluid pump to drain the infection and excess fluid from her thigh.

57. Ms. Mancini endured extreme pain and suffering.

58. Kyson had to be weaned off of narcotics several weeks after his birth.

59. Kyson was finally able to go home with his mother sometime in September 2015.

## DAMAGES

60. As a direct, legal, and proximate result of Defendants' acts and/or omissions, Plaintiffs sustained significant economic and non-economic damages, including, but not limited to, medical expenses, physical pain, emotional distress, and violations of their constitutional rights.

61. As a direct, legal, and proximate result of Defendants' acts and/or omissions, Plaintiff Ms. Mancini has sustained special and economic damages representing surgeries, physical therapy, and future costs associated with surgeries and other medical procedures to address her injuries.

62. As a direct, legal, and proximate result of Defendants' acts and/or omissions, Plaintiffs seek all damages and remedies allowable pursuant to 42 U.S.C. §§ 1983 and 1988, the applicable federal law and Indiana law.

63. Defendants acted with oppression, malice, deliberate indifference, and/or willful and wanton recklessness, which justifies the imposition of punitive and exemplary damages.

## COUNT I: 42 U.S.C. § 1983

### Violation of Plaintiffs Constitutional Rights Against Defendant Officers

64. Plaintiffs incorporate by reference the preceding paragraphs of this complaint as though fully set forth herein.

65. At all times herein mentioned, Defendants had an obligation to comply with the Fourth and Fourteenth Amendments to the United States Constitution.

66. Defendants failed to meet this obligation with respect to the Plaintiffs.

67. Defendant Officers acted under color of law in using excessive and unreasonable force against Ms. Mancini and her unborn child when they restrained their liberty by directing the IMPD canine onto the property of Plaintiffs, intending to effect a seizure, knowing that the canine was specifically trained to violently seize anyone in the space in which he was deployed, and causing the canine to maul, bite, and incapacitate Ms. Mancini, resulting in severe and permanent injuries.

68. Defendants' seizure and excessive force violated Plaintiffs' rights under the Fourth Amendment to be secure in their person from unreasonable searches and seizures.

69. Defendants' seizure and excessive force violated Plaintiffs' substantive due process rights under the Fourteenth Amendment through actions and omissions that shock the conscience.

70. As a direct and legal result of Defendants' violations of the Fourth and Fourteenth Amendments, Plaintiffs sustained significant economic and non-economic damages as alleged herein.

## COUNT II: 42 U.S.C. § 1983

### Municipal Liability Against City of Indianapolis and IMPD Chief Hite

71. Plaintiffs incorporate by reference the preceding paragraphs of this complaint as though fully set forth herein.

72. The policies, customs, regulations, practices, acts, and omissions of Defendants City of Indianapolis and Chief Rick Hite, in his official capacity, regarding the use of IMPD

canines, and subjecting people to excessive force, were moving and causative forces behind the violations of constitutional rights and the resulting damages suffered by Plaintiffs.

73. The seizure of and severe attack on Ms. Mancini and her unborn child stemmed from a policy of allowing the improper use of IMPD canines, a form of deadly force, to pursue a minor felon in circumstances where innocent third parties or bystanders could reasonably be expected to be present.

74. Plaintiffs allege that Defendants have subjected other individuals besides Plaintiffs to excessive force, including but not limited to excessive force through the misuse of police canines.

75. Further, Defendants' adoption, ratification, and approval of the misconduct of the individually named Defendant Officers, as alleged herein, were moving and causative forces behind the violations of constitutional rights and the resulting damages suffered by Plaintiffs.

76. Defendants' failure to properly train, supervise, and control the IMPD Officers regarding the proper use of IMPD canines, and the proper use of force, were the actual and proximate cause of the violations of constitutional rights and the resulting damages suffered by Plaintiffs.

77. Defendants knew or should have known that their acts and omissions were likely to result in a violation of the Fourth and Fourteenth Amendment rights of innocent persons.

78. As a direct, legal, and proximate result of Defendants' deliberate indifference, gross negligence, or reckless disregard, Plaintiffs suffered economic and noneconomic damages.

## COUNT III: General Negligence

### Against All Defendants

79.     Plaintiffs incorporate by reference the preceding paragraphs of this complaint as though fully set forth herein.

80.     As of July 16, 2015, Defendants owned, possessed, harbored, cared for, entrusted, controlled, or otherwise were legally responsible for the IMPD canine that attacked Ms. Mancini and her unborn child.

81.     Prior to July 16, 2015, Defendants knew or should have known that the IMPD canine was dangerous and was likely to bite and/or otherwise attack people because of the canine's training and experience.

82.     Defendants, and each of them, were aware of, or should have been aware of, the dangerous propensities of the IMPD canine, and failed to take reasonable care that the canine would not attack innocent bystanders.

83.     At all times, Defendants owed Plaintiffs a duty to act with due care to avoid unnecessary or unjustified harm.

84.     The City, IMPD, and Defendant Hite also owed Plaintiffs a duty to hire, train, and supervise its employees so as not to cause harm to Plaintiffs and to prevent the violation of constitutional and other legal rights.

85.     Defendants recklessly, carelessly, and negligently commanded, or failed to command, the IMPD canine, thereby causing the canine to maul and bite Ms. Mancini upon entering the fenced-in yard of the Plaintiffs.

86. The City also breached its duty to use reasonable care in the hiring, supervision, training, and/or retention of members of its police department, including Defendant Officers, to avoid foreseeable injury and damages to members of the public such as Plaintiffs.

87. The incident and ensuing injuries described were foreseeable and were the legal and proximate result of the Defendants' negligence.

88. The acts and/or omissions of Defendants, and each of them, as alleged herein occurred in the course and scope of their employment with the City, and the City is liable for its employees' acts and/or omissions under the doctrine of *respondeat superior.*

## COUNT IV: Assault

### Against All Defendants

89. Plaintiffs incorporate by reference the preceding paragraphs of this complaint as though fully set forth herein.

90. Defendants, acting within the course and scope of their employment with the City, caused Ms. Mancini to be assaulted through threats of non-consensual harmful contact that the IMPD canine had the apparent ability to cause.

91. Defendants' actions were a substantial factor in causing harm to Plaintiffs, and were a legal and proximate cause of Plaintiffs' severe injuries.

92. Defendants' conduct was unreasonable.

93. Defendants acted with oppression, malice, deliberate indifference, and/or willful and wanton recklessness, which justifies the imposition of punitive and exemplary damages.

94. The acts and/or omissions of Defendants, and each of them, as alleged herein occurred in the course and scope of their employment with the City, and the City is liable for its employees' acts and/or omissions under the doctrine of *respondeat superior*.

## COUNT V: Battery

### Against All Defendants

95.     Plaintiffs incorporate by reference the preceding paragraphs of this complaint as though fully set forth herein.

96.     Defendants, acting within the course and scope of their employment with the City, caused Ms. Mancini to be subjected to non-consensual, non-privileged, offensive biting and mauling, constituting battery upon her body, causing severe bodily injury.

97.     Defendants' actions were a substantial factor in causing harm to Plaintiffs, and were a legal and proximate cause of Plaintiffs' severe injuries.

98.     Defendants' conduct was unreasonable.

99.     Defendants acted with oppression, malice, deliberate indifference, and/or willful and wanton recklessness, which justifies the imposition of punitive and exemplary damages.

100.    The acts and/or omissions of Defendants, and each of them, as alleged herein occurred in the course and scope of their employment with the City, and the City is liable for its employees' acts and/or omissions under the doctrine of *respondeat superior*.

## COUNT VI: Intentional Infliction of Emotional Distress

### Against All Defendants

101.    Plaintiffs incorporate by reference the preceding paragraphs of this complaint as though fully set forth herein.

102.    Defendants engaged in extreme, unreasonable, and outrageous conduct with the intention of causing, or reckless disregard of the foreseeable risk of causing, extreme emotional distress to Plaintiffs.

103. Plaintiffs in fact suffered severe and extreme emotional distress, physical injuries, and medical and related expenses from the canine attack, which was the actual and proximate cause of those damages.

104. Defendants acted with oppression, malice, deliberate indifference, and/or willful and wanton recklessness, which justifies the imposition of punitive and exemplary damages.

105. The acts and/or omissions of Defendants, and each of them, as alleged herein, occurred in the course and scope of their employment with the City, and the City is liable for its employees' acts and/or omissions under the doctrine of *respondeat superior.*

### COUNT VII: Negligent Infliction of Emotional Distress

### Against All Defendants

106. Plaintiffs incorporate by reference the preceding paragraphs of this complaint as though fully set forth herein.

107. Defendants engaged in extreme, unreasonable, and outrageous conduct through their negligence, deliberate indifference, and/or reckless disregard of the foreseeable risk of causing extreme emotional distress to Plaintiffs.

108. Plaintiffs in fact suffered severe and extreme emotional distress, physical injuries, and medical and related expenses from the canine attack, which was the actual and proximate cause of these damages.

109. Plaintiffs have suffered serious emotional distress of the type that a reasonable person would expect to occur.

110. Defendants acted with oppression, malice, deliberate indifference, and/or willful and wanton recklessness, which justifies the imposition of punitive and exemplary damages.

111. The acts and/or omissions of Defendants, and each of them, as alleged herein occurred in the course and scope of their employment with the City, and the City is liable for its employees' acts and/or omissions under the doctrine of *respondeat superior.*

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for the following relief:

A. That judgment be entered in their favor and against all Defendants;

B. That they receive damages for the physical and emotional harm they sustained as a result of the Defendants' deliberate indifference to and/or disregard of the Plaintiffs' constitutional rights;

C. That they receive damages for the physical and emotional harm they sustained as a result of the Defendants' tortious conduct;

D. An award of punitive damages to discourage Defendants' from similar future conduct;

E. Attorney's fees pursuant to 42 U.S.C. § 1988; and

F. All other relief just and proper in the premises.

## JURY DEMAND

Plaintiffs demand that this matter be tried by a jury.

Respectfully submitted,

/s:/ *David E. Miller*
David Evan Miller (NY Bar: 509-2325)
Jonathan C. Little (IN Bar: 27421-49)
**SAEED & LITTLE, LLP**
1433 N. Meridian Street
Indianapolis, IN 46202
(317) 371-5535
david@sllawfirm.com
jon@sllawfirm.com