UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARA MANCINI, *et al.* </br> Plaintiffs, </br> </br> vs. </br> </br> CITY OF INDIANAPOLIS, *et al.* </br> Defendants. | ) </br> ) </br> ) </br> ) </br> ) No. 1:16-cv-02048-TWP-MJD </br> ) </br> ) </br> ) </br> ) |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion to Dismiss. [Dkt. 12.] Plaintiff Mara Mancini alleges that she was mauled by a police dog who was released in an effort to apprehend a fleeing suspect. Ms. Mancini and son K.C., with whom Ms. Mancini was pregnant at the time of the incident, allege constitutional claims pursuant to 42 U.S.C. § 1983. Plaintiffs' Amended Complaint [Dkt. 11] alleges horrendous injuries and a grievous lack of discretion by the actors. But because a grievous lack of discretion does not suffice to state a constitutional cause of action under binding Seventh Circuit precedent, the Magistrate Judge recommends that the Court **GRANT** Defendants' Motion in its entirety.

**I. Standard of Review**

A motion to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a plaintiff's complaint. Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8 provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In assessing the complaint under Rule 12(b)(6), Court takes all well-pleaded allegations as true and draws all

reasonable inferences in favor of the non-movant, *Hayes*, 670 F.3d at 813, "but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth," *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). After thus "excising" such conclusory allegations, *McCauley*, 671 F.3d at 616, the Court must determine whether the plaintiff's complaint "state[s] a claim to relief that is plausible on its face," *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint meets this standard where it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## II. Background

On July 16, 2015, around 10:30 pm, officers from the Indianapolis Metropolitan Police Department (IMPD) chased after a suspect fleeing a traffic stop. [Dkt. 11 at 4 (¶¶ 17).] At some point in the chase, an officer released a dog to aid in their pursuit of the suspect. [*Id.* (¶18).] The search led to Ms. Mancini's neighborhood. [*Id.* (¶ 17).] This caused a commotion outside of Ms. Mancini's home, and Ms. Mancini's dogs began barking. [*Id.* (¶ 23).]

Ms. Mancini stepped out of her home to see what was causing the commotion. [*Id.* (¶¶ 24-25).] When she did so, the IMPD's dog attacked and mauled her, dragging her to the ground and biting her elbow, arm, and thigh. [*Id.* (¶¶ 25-30).] It took assistance from an officer at the scene to free Ms. Mancini from the dog's grasp, and Ms. Mancini was left bleeding on the ground with puncture wounds. [Dkt. 11 at 4-5 (¶¶ 30-33).] Another officer was injured in the struggle with the dog. [Dkt. 11 at 5 (¶ 32).]

Ms. Mancini, pregnant with Plaintiff K.C., required emergency care and surgery as a result of the dog attack. [Dkt. 11 at 4-5 (¶¶ 21-22, 35-41).] The wounds became infected and, a

month later, required additional emergency surgery. [Dkt. 11 at 6 (¶¶ 42-45).] Due to the extreme stress from the injuries, Ms. Mancini experienced complications with her pregnancy and delivered K.C. one month early. [Dkt. 11 at 5-6 (¶¶ 39-40, 46-49, 53).] K.C. was born with signs of his mother's infection and was addicted to the narcotics prescribed for Ms. Mancini's pain following the dog attack. [Dkt. 11 at 6-7 (¶¶ 50-53, 57-58).]

Ms. Mancini and K.C. brought suit in this Court on July 29, 2016 [Dkt. 1], filing their operative Amended Complaint on August 25, 2016 [Dkt. 11]. Plaintiffs have sued various officers by name in their individual and official capacities ("Officer Defendants"); anonymous individuals and corporations ("Unnamed Defendants"); the former IMPD chief; the IMPD; and the City of Indianapolis ("City"). Plaintiffs allege unreasonable seizure and substantive due process claims under the Fourth and Fourteenth Amendments against the Officer Defendants and against the City of Indianapolis pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). [Dkt. 11 at 7-9 (¶¶ 63-77).] Defendants filed their Motion to Dismiss on September 8, 2016 [Dkt. 12], which Motion is now fully briefed and ripe for determination [Dkt. 13; Dkt. 21; Dkt. 22].

### III. Discussion

Defendants move to dismiss the Amended Complaint in its entirety. The Court first addresses Defendants' uncontested arguments that several Defendants were improperly named. Defendants direct specific arguments to the merits of Plaintiffs' excessive force and substantive due process claims; argue that Plaintiffs may not maintain their *Monell* claim; and argue in the alternative that the Officer Defendants are entitled to qualified immunity. The Court addresses each of these issues in turn.

### A. Uncontested Issues

Defendants raise several issues to which Plaintiffs did not respond regarding the Defendants named in the Amended Complaint. Where a movant provides "plausible reasons" to support an argument for dismissal, *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1042 (7th Cir. 1999), "[f]ailure to respond to [the] argument . . . results in waiver," *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

Having considered Defendants' arguments and Plaintiffs' waiver, the undersigned recommends that the Court **DISMISS** all claims against each of the following:

- the IMPD as an entity not subject to suit [Dkt. 21 at 7 (citing *Sow v. Fortville Police Dep't*, 636 F.3d 293, 200 (7th Cir. 2011))];

- the Officer Defendants in their official capacities as duplicative of the claims against the City [*id.* (citing *Ball v. City of Muncie*, 28 F. Supp. 3d 797, 802, 809 (S.D. Ind. 2014))];

- Rick Hite in his official capacity because he no longer holds the position of chief of IMPD [*id.* (citing Fed. R. Civ. P. 25(d))];

- all named police officers in their individual and official capacities for failure to allege personal involvement in the constitutional deprivations [*id.* at 7-8 (citing *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012))].

Consistent with the foregoing, Plaintiffs only contest dismissal of their claims against the Unnamed Defendants and the City, to which issues the Court now turns.

### B. Unreasonable Seizure

Defendants argue that Plaintiffs fail to state a Fourth Amendment claim for unreasonable seizure because Ms. Mancini was never "seized" by the actors. Rather, Ms. Mancini, a bystander

to the pursuit of the fleeing felon, was unintentionally injured. In response, Plaintiffs argue that whether Ms. Mancini was a bystander is irrelevant and that she was in fact seized. In reply, Defendants distinguish the cases to which Plaintiffs cite.

The Fourth Amendment guarantees the "right of the people to be secure . . . against unreasonable . . . seizures." U.S. Const. amend. IV. In *Brower v. County of Inyo*, the Supreme Court held that

> a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*.

489 U.S. 593, 596-97 (1989) (emphasis in original). The primary point of contention between the parties surrounds the meaning of the words "through means intentionally applied." Defendants argue that one is seized only where an actor directs an action at a specific person; that is, where the actor intends the resulting consequence. Plaintiffs, on the other hand, advance a broader interpretation of "intentionally applied" as referring to a volitional act directed at any person. This dispute is readily resolved by reference to Seventh Circuit case law.

The Seventh Circuit's reasoning in *Bublitz v. Cottey*, 327 F.3d 485, 489 (7th Cir. 2003) forecloses Plaintiffs' theory. *Bublitz* involved a high speed car chase. The defendant officers, in an effort to stop the fleeing vehicle, set up a spike strip. The fleeing vehicle ran over the spike, veered to the side, and struck the vehicle of an innocent bystander, killing two of its occupants. The court held that summary judgment was required because the defendants "did not intentionally apply *any* means in an attempt to terminate the freedom of movement" of the injured bystanders. *Id.* (emphasis in original). Rather, the car crash was "an unintended consequence of an attempt to seize" the fleeing vehicle. *Id.* The mere intent to seize the one

5

particular car did not mean that the defendants "intended to stop any other car"—including the bystanders', which "was simply not the intended object of the defendant officers' attempts to seize the fleeing" driver. *Id.*

Unlike in *Bublitz*, this case is before the Court solely on the pleadings. But Plaintiffs' own allegations demonstrate that Ms. Mancini "was simply not the intended object" of Defendants' efforts to seize the fleeing suspect. [*See, e.g.*, Dkt. 11 at 4 (¶ 18) ("An unknown IMPD officer released the IMPD canine during the pursuant [sic] of Mr. Walker.").] That Defendants released a dog intending to seize the fleeing suspect does **not** mean that Defendants intended to seize any other person—just as in *Bublitz*, the officer's decision to set up a spike strip did not mean that the officer intended to seize just any driver that happened to drive by. *Bublitz* specifically rejected the broad reading of "intentionally applied" advanced by Plaintiffs. Rather, "intentionally applied" requires the intent to restrain a particular person.

Plaintiffs seek to distinguish *Bublitz*, citing to several cases from outside of this Circuit. In addition to not binding this Court, they are largely inapposite. *Vathekan v. Prince George's County*, a Fourth Circuit case, involved a police dog attack on an innocent person. 154 F.3d 173 (4th Cir. 1998). But that is where the similarities between *Vathekan* and this case end. In *Vathekan*, the police officers were investigating a robbery in a basement apartment. The canine officer failed to call out to warn persons inside the apartment of the dog and unleashed the dog—despite the fact that the dog had "alerted" the officer to the presence of a person behind an interior door. *Id.* at 178. The officer "believed at that time that the person behind that door might have been a burglar." *Id.* But by releasing the dog with the "inten[t] that the dog *find and bite **that** person*" behind the door—the person to whose presence the dog had previously alerted—the officer intended to stop that person. *Id.* (additional emphasis added). The fact that

6

the officer did not know the identity of the seized person (or only "intended" to seize a guilty person) was irrelevant to his intent to direct the dog to seize the particular person located in the house.  This is because, as the *Vathekan* court noted, "a fourth amendment seizure may occur notwithstanding that the person restrained was mistakenly thought to be another, because he nevertheless is the **intended object** of the specific act of physical restraint."  *Id.* (emphasis added) (quoting *Rucker v. Harford Cnty.*, 946 F.2d 278, 281 (4th Cir. 1991)).  In this case, Plaintiffs allege that the "intended object of the specific act of physical restraint" was the fleeing suspect; Plaintiffs do not allege (as in *Vathekan*) that the officers unleashed the dog **at her** in the mistaken belief that she was the sought-after suspect.

As Defendants explain, this understanding of *Vathekan* is consistent with the Fourth Circuit's own understanding of that case.  Despite Plaintiffs' protestations that "there is no requirement of a specific intent directed at a specific person" [Dkt. 21 at 8], that court later observed in *Milstead v. Kibler* that mistakes in the application of force by police fall into two broad categories.  243 F.3d 157, 163-64 (4th Cir. 2001), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).  Where the "means of the seizure [are] **not deliberately applied to the victim**," such as where an officer shoots at a suspect but hits a bystander, the shooting does **not** give rise to a Fourth Amendment claim.  *Id.* (emphasis added). On the other hand, cases where an "officer **deliberately directs his force against an innocent victim**" implicate the Fourth Amendment—such as the actions in *Vathekan*.  *Id.* (emphasis added).  The Amended Complaint does not allege that the officers deliberately directed the dog at Ms. Mancini.  *Vathekan* therefore is of no assistance to Plaintiffs' case.

Second, Plaintiffs quote heavily from an Eastern District of California opinion, *Rodriguez v. City of Fresno*, 819 F. Supp. 2d 937, 946-47 (E.D. Cal. 2011), in support of their categorical

7

assertion that the rule in *Bublitz* "does not apply to dog bite cases and other circuits have explicitly found as such." [Dkt. 21 at 6.] *Rodriguez*, like *Bublitz* and *Vathekan*, recognized the distinction between cases where "an innocent victim [is] the object of police application of force" and cases where the innocent victim is injured where police target a third party. *Id.* at 946. However, the court also stated the following regarding dog attack cases:

> In *Vathekan,* 154 F.3d at 173, and in *Garcia v. City of Sacramento,* 2010 WL 3521954 (E.D.Cal.2010), the deployment of a police dog into a building for the purpose of seizing a suspect was held to constitute a seizure under the Fourth Amendment where the dog bit bystanders who were not the object of the police action. In both cases, the courts reasoned that when officers intentionally deploy a dog, which is incapable of discriminating suspects from bystanders and is trained to bite whoever it encounters, the officers effectively intend to seize anyone in the space where the dog was deployed. *See Vathekan,* 154 F.3d at 178–179; *Garcia,* 2010 WL 3521954 at *2.

*Id.* at 946-47. But *Rodriguez* reads *Vathekan* too broadly. As explained above, the result in *Vathekan* turned on the fact that the police set the dog on a particular person they knew to be in the home; later Fourth Circuit cases have reemphasized this point. *Garcia*, to the extent the court held that allegations of a general "intent to use . . . a force to terminate [any person's] freedom of movement" is sufficient to allege a seizure under the Fourth Amendment, is contrary to the binding Seventh Circuit precedent cited above. No. 10-cv-00826-JAM-KJN, 2010 WL 3521954, at *2 (E.D. Cal. Sept. 8, 2010). More to the point, however, *Rodriguez* and the cases cited therein provide no support for Plaintiffs' argument that "other circuits have explicitly found" that a different standard of intent applies to dog bite cases.[1] [Dkt. 21 at 7.]

---

[1] Plaintiffs place much emphasis on its argument that a "dog, as trained and as deployed [is] unable to distinguish between suspects and innocent citizens." [Dkt. 21 at 8.] While the holding and reasoning of *Bublitz* alone foreclose Plaintiffs' argument, the Court notes that a spike strip, as deployed, likewise cannot distinguish between suspects and innocent citizens.

8

Third, Plaintiffs cite to the Eleventh Circuit's opinion in *Doe I v. Valencia College Board of Trustees*, 838 F.3d 1207 (11th Cir. 2016) for the proposition that "the Fourth Amendment does not contain a purpose requirement." [Dkt. 21 at 8.] *Doe* stands for the straightforward proposition that the purpose behind a governmental actor's search or seizure is irrelevant to the determination of whether the Fourth Amendment applies. *See id.* at 1212 (concluding that it was irrelevant to applicability of Fourth Amendment whether governmental action had an "'investigative' or 'administrative' purpose"). But *Doe* is utterly inapplicable to this case because it says nothing about when a seizure occurs.

Finally, Plaintiffs briefly raise a wholly different alleged seizure, premised upon the "officers encourag[ing] the paramedics to address the injuries of another officer, while leaving Ms. Mancini on the ground." [Dkt. 21 at 9.] Defendants challenge this contention on two grounds. First, the Amended Complaint pleads no such claim. This argument is well taken. All that the Amended Complaint actually states is: "When emergency medical technicians arrived on the scene, the injured IMPD Officer was treated first." [Dkt. 11 at 5 (¶ 34).] That allegation does not remotely lend itself to the reasonable inference that the officers on the scene told the medical professionals to leave the bloodied Ms. Mancini on the ground and instead treat the officer. Nor does it lend itself to the reasonable inference that the officers were in any way personally involved in the alleged constitutional violation. *See Backes v. Vill. Of Peoria Heights*, 662 F.3d 866, 869 (7th Cir. 2011) (noting that the terms "subjects" and "causes to be subjected" limit the applicability of § 1983 to defendants who are "personally responsible for the deprivation of the right at the root" of a plaintiff's claim).

Second, even if the Amended Complaint did allege that officers instructed the paramedics to first treat the police officer, Defendants argue that such action does not constitute a seizure.

9

Even the most generous interpretation of Plaintiffs' mischaracterization of their Amended Complaint could not yield the conclusion that the officers intended to terminate Ms. Mancini's "freedom of movement" as opposed to intending to render assistance to the injured officer.[2] *Brower v. Cty. of Inyo*, 489 U.S. 593, 597 (1989). If the officers in fact acted as Plaintiffs suggest in their brief (but do not allege in their Amended Complaint), such behavior was certainly untoward. It does not, however, give rise to an unreasonable seizure claim under the Fourth Amendment.

Plaintiffs Amended Complaint fails to plausibly allege that Defendants intended to stop Ms. Mancini and thus fails to allege a seizure under the Fourth Amendment. The Court should therefore **GRANT** Defendants' Motion with respect to Plaintiffs' unreasonable seizure claims.

### C. Substantive Due Process

Defendants next contend that the Amended Complaint fails to state a substantive due process claim, arguing that the allegations do not amount to conscience-shocking conduct. Plaintiffs do not directly respond to Defendants' arguments, but instead turn to a 1991 Northern District of Indiana case that permitted a substantive due process claim to proceed past a motion to dismiss. [Dkt. 21 at 10 (citing *Frye v. Akron*, 758 F. Supp. 1320, 1321-22 (N.D. Ind. 1991)).] In reply, Defendants distinguish *Frye* and reiterate their arguments.

As the Seventh Circuit has made clear, Supreme Court precedent "establishes a heavy burden for a plaintiff to bear when making a § 1983 claim based on the Fourteenth Amendment.

---

[2] The inapposite cases to which Plaintiffs cite do not affect this conclusion one iota. [*See* Dkt. 21 at 9 (citing *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (concluding that "deadly force" may not be used "to prevent the escape of an apparently unarmed suspected felon" except where it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others"); *Saunders v. Duke*, 766 F.3d 1262 (11th Cir. 2014) (holding that plaintiff's claim that police slammed his head against pavement after being handcuffed stated Fourth Amendment claim)).]

'To this end, for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience.'" *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Thus, substantive due process claims are available only where a defendant engages in "*deliberate* action to harm another" that is "'unjustifiable by any government interest.'" *Bublitz*, 327 F.3d at 491 (emphasis in original) (quoting *Lewis*, 523 U.S. at 849). The "conscience-shocking" standard with its intent requirement is the correct standard for police chases—on foot or otherwise—under the Fourteenth Amendment. *See, e.g.*, *Lewis*, 523 U.S. at 853-54 ("Just as a purpose to cause harm is needed for Eighth Amendment liability in a riot case, so it ought to be needed for due process liability in a pursuit case."); *Steen*, 486 F.3d at 1023; *Bean v. Indiana Univ.*, 855 F. Supp. 2d 857, 864 (S.D. Ind. 2012) (concluding on motion to dismiss that complaint failed to adequately allege that officer "acted with malicious or sadistic intent" in case where officer injured plaintiff while pursuing fleeing suspect on foot).[3]

The application of the conscience-shocking standard to this case is straightforward: the Amended Complaint does not contain a single allegation that could lead to the reasonable inference that Defendants engaged in a "deliberate action to harm" Ms. Mancini. *Bublitz*, 327 F.3d at 491 (emphasis omitted). The only allegations to which Plaintiffs cite to support their argument is that Defendants used "excessive and unreasonable force" [Dkt. 21 at 11 (quoting Dkt. 10 at 8 (¶ 66))] and "acted with oppression, malice, deliberate indifference, and/or willful or

---

[3] The *Bublitz* court and other courts have noted that, "[o]n some occasions, courts have spoken of a 'deliberate indifference' standard for measuring whether conduct violates the Fourteenth Amendment." *Id.* at 490. But, to the extent that "deliberate indifference" "present[s a] different inquir[y]," such indifference must still rise to the level of "conscience shocking." *Id.* Moreover, "the deliberate indifference articulation should only be used when actual deliberation by a defendant was possible." *Id.* In this case, the conventional application of this well-established standard is warranted particularly because Plaintiffs have not offered any discernible argument suggesting that a different standard is applicable.

11

wanton recklessness" [*Id.* (quoting Dkt. 10 at 7 (¶ 62))]. These allegations do nothing more than parrot legal standards, and therefore do nothing to support the sufficiency of their complaint.

Plaintiffs' reliance upon *Frye*, 759 F. Supp. 1320, is misplaced. First, Plaintiffs rely upon *Frye* to support their argument that a Fourteenth Amendment claim may lie in cases where a Fourth Amendment claim fails for want of a seizure. But Defendants do not argue that Plaintiffs' claim is foreclosed merely because it looks akin to an unreasonable seizure claim; in any event, such an argument would plainly be foreclosed by *Lewis*. 523 U.S. at 844 (1998) ("*Graham* [*v. Connor*, 490 U.S. 386 (1989)]'s more-specific-provision rule is therefore no bar to respondents' suit [under the Fourteenth Amendment].").

Second, Plaintiffs quote the *Frye* court's characterization of the allegations in the complaint, where the plaintiffs alleged that the officer "operated his vehicle with recklessness and conscious disregard," to support the sufficiency of the Amended Complaint in this case. But whatever the actual allegations in the *Frye* complaint may have been, such conclusory allegations must be disregarded under the *Twombly*/*Iqbal* regime. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Frye*, of course, could not apply the *Twombly*/*Iqbal* rule because those cases were decided **after** *Frye*. There is a more fundamental problem with Plaintiffs' position: *Lewis* addressed "whether a police officer violates the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life." 523 U.S. at 836. The answer to that inquiry, the Supreme Court held, was "**no**, . . . only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience." *Id.* (emphasis

added). Again, *Frye* was decided before *Lewis* and thus *Frye* could not anticipate that holding—but *Lewis* clearly rendered that portion of *Frye* obsolete.[4]

The Amended Complaint fails to plausibly allege that the Officer Defendants' conduct rose to the level of conscience-shocking. Accordingly, the Court should **GRANT** Defendants' Motion with respect to Plaintiffs' substantive due process claims.[5]

### D. *Monell* Claim

Defendants next argue that Plaintiffs' *Monell* claims against the City must be dismissed due to the failure to allege an underlying constitutional claim. Plaintiffs respond that they have in fact pleaded a constitutional claim. An underlying constitutional claim "is a necessary element of a *Monell* claim." *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016). Consistent with the Magistrate Judge's conclusions that the Amended Complaint does not state a constitutional claim against any of the Individual Defendants, the Court should **GRANT** Defendants' Motion with respect to Plaintiffs' claims against the City.

### E. Qualified Immunity

Defendants argue that, in the alternative to an adjudication of the constitutional claims on the merits, the Individual Defendants are entitled to qualified immunity. Defendants argue that

---

[4] Plaintiffs note that *Lewis* cited *Frye* with approval—but it did so only to demonstrate that the rule in *Graham* was no bar to a Fourteenth Amendment substantive due process claim where the allegations at issue are akin to a seizure. *Lewis* did not cite *Frye* for its discussion of the state of mind required for a substantive due process claim, which is plainly at odds with the Supreme Court's decision.

[5] Plaintiffs again briefly return to their unpled theory that the Officer Defendants "directed" the emergency personnel on the scene to tend to the wounded officer instead of Ms. Mancini. [Dkt. 21 at 11.] This presents the same shortcomings as the Fourth Amendment claim. The Amended Complaint does not remotely allege this claim, and even if it did, asking (or "directing") medical personnel to aid one injured person instead of another would not be a "deliberate action to harm another" as required to state a Fourteenth Amendment claim. *Bublitz,* 327 F.3d at 491 (emphasis omitted).

13

Plaintiffs cannot point to a sufficiently similar case to clearly establish a constitutional violation. In response, Plaintiffs cite to the Fourth Circuit cases addressed above.

"Government officials performing discretionary functions are entitled to qualified immunity from suit 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 352 (7th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). Whether defendants are entitled to qualified immunity is properly "resolved at the earliest stages of litigation." *Id.* "[O]nce the defense is raised, it becomes the plaintiff's burden to defeat it." *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008).

To deny defendants' claim to qualified immunity at the pleading stage, "(1) 'the complaint must adequately allege facts that, if true, would constitute a violation of a constitutional right,' and (2) 'the case law must be 'clearly established' at the time of the alleged violation, so that a reasonable public official would have know[n] that his conduct was unlawful.'" *Kiddy-Brown*, 408 F.3d at 353 (quoting *Delgado v. Jones*, 282 F.3d 511, 515 (7th Cir. 2002)). The Court, in its "sound discretion," may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Satisfying the second prong generally requires the plaintiff to "point to closely analogous" precedential authority "decided prior to the defendants' challenged actions." *Upton v. Thompson*, 930 F.2d 1209, 1212 (7th Cir. 1991) (internal quotation omitted); *Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir. 1995) ("[D]istrict court decisions cannot *clearly* establish a constitutional right."). This showing does not "require a plaintiff to produce a case that is 'directly on point' in order to show that a right is clearly established." *Kiddy-Brown*, 408 F.3d at

356 (quoting *Nabozny v. Podlesny*, 92 F.3d 446, 456 (7th Cir. 1996)).  However, "[a] plaintiff can defeat qualified immunity by showing 'that the violation was so clear that a government official would have known that his actions violated the plaintiff's rights even in the absence of a factually similar case.'" *Lessley v. City of Madison*, 654 F. Supp. 2d 877, 901 (S.D. Ind. 2009) (Hamilton, C.J.) (quoting *Lee v. Young*, 533 F.3d 505, 512 (7th Cir. 2008)).

     As explained above, the Fourth Circuit cases to which Plaintiffs cite do not clearly establish the alleged constitutional violation in this case.  Moreover, they are not precedential authority; Plaintiffs fail to cite to a single binding case with similar facts wherein the court found a constitutional violation.  While a plaintiff may otherwise defeat qualified immunity by showing that the violation is clearly established even in the absence of binding authority, Plaintiffs in this case fail to put forth a cogent argument that such clarity is present here.  Therefore, while the Court should dismiss the constitutional claims on their merits, the Court should find in the alternative that the Individual Defendants are entitled to qualified immunity.  The Court should thus **GRANT** Defendants' Motion for this additional reason.

## IV.  Conclusion

     Plaintiffs allege serious injury as a result of state action.  But the Constitution does not "extend . . . a right to be free of injury wherever the State may be characterized as the tortfeasor." *Paul v. Davis*, 424 U.S. 693, 701 (1976).  Nor is it "a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Id*.  Whatever remedies Plaintiffs may have in this case must come from state law, not the U.S. Constitution.  Accordingly, the Magistrate Judge recommends that the Court **GRANT** Defendants' Motion to Dismiss [Dkt. 12], **DISMISS** Plaintiffs' constitutional claims against all parties **WITH PREJUDICE**, and **DISMISS** Plaintiffs' Amended Complaint [Dkt. 11] **WITHOUT PREJUDICE**.

Any objections to the Magistrate Judge's Report and Recommendation must be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:  06 JAN 2017

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.