UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARA MANCINI, and K.C., <br> by his next friend and father, CLYDE CLARK, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF INDIANAPOLIS, INDIANAPOLIS METROPOLITAN POLICE DEPARTMENT (IMPD), and in their official and individual capacities the following officers, RICK HITE, TROY RIGGS, CRAIG HEDDEN, DOUGLAS HIMMEL, JASON NORMENT, KRISTOPHER KUNZ, GLEN GEISSER, DEBRA DOTSON, CONRAD SIMPSON, GREGORY STEWART K9 Ofc., KEITH SHELTON, CHARLES WHEELER Sgt., JOHN MONTGOMERY, JUSTIN MUSSER, CHARLES TICE, LONA DOUGLAS, MELISSA LEMRICK, JON KING, JEFFERY NEWLIN, CLAYTON PORTELL, JEREMY GRAY, DAVID KINSEY, DOES 1-50, ROE CORPORATIONS 1-10, <br><br> Defendants. | Case No. 1:16-cv-02048-TWP-MJD |

**ENTRY ON REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiffs Mara Mancini's ("Ms. Mancini") and her son K.C.'s ("K.C.") (collectively, the "Plaintiffs") Objection to Magistrate's Report and Recommendation ([Filing No. 43](#)). On January 6, 2017, the Magistrate Judge issued a recommendation, pursuant to Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b)(1), that the Court grant Defendants Motion to Dismiss Plaintiffs' Amended Complaint ([Filing No. 12](#)). Plaintiffs filed this action against Defendants, the City of Indianapolis, Indianapolis Metropolitan Police Department ("IMPD"), and numerous individual IMPD police officers (the "Officer

Defendants") (collectively, the "City"), alleging constitutional claims pursuant to 42 U.S.C. § 1983. The Plaintiffs timely filed their Objection to the Magistrate Judge's Report and Recommendation. For the reasons stated below, the Court **SUSTAINS in part** and **OVERRULES in part** Plaintiffs' objection and **ADOPTS in part** the Magistrate Judge's Report and Recommendation, with the additional discussion and conclusions stated herein.

## I. BACKGROUND

The facts, taken from Plaintiffs' Amended Complaint, are set forth in detail in the Magistrate Judge's Report and Recommendation ([Filing No. 34 at 2](#)–3), and are accepted as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."). Accordingly, the Court adopts those facts, and they are only summarized in this Entry. In summary, on July 16, 2015, IMPD officers released an IMPD canine while in pursuit of a suspect fleeing a traffic stop. Hearing a commotion and hearing her dog barking, Ms. Mancini stepped out of the front door to her home. When she did so, an IMPD canine, who was inside of Ms. Mancini's fenced yard, attacked and mauled her. The canine dragged her to the ground, biting her elbow, arm, and thigh. It took assistance from an IMPD officer at the scene to free Ms. Mancini from the dog's grasp. At the time of the attack, Ms. Mancini was pregnant with K.C. As a result of the dog attack, she required emergency care and surgery. Her wounds became infected and additional emergency surgery was required. The extreme stress of the injuries caused Ms. Mancini to experience complications with her pregnancy and K.C. was born one month early with signs of his mother's infection, and he was addicted to the narcotics prescribed for Ms. Mancini's pain following the dog attack.

2

Plaintiffs filed an Amended Complaint for damages, alleging unreasonable seizure and substantive due process claims under the Fourth and Fourteenth Amendments against the Officer Defendants and the City. They allege:

> Defendant Officers acted under color of law in using excessive and unreasonable force against Ms. Mancini and her unborn child when they restrained their liberty by directing the IMPD canine onto the property of Plaintiffs, intending to effect a seizure, knowing that the canine was specifically trained to violently seize anyone in the space in which he was deployed . . . .

([Filing No. 11 at 8](Filing No. 11 at 8) ¶66.) On September 8, 2016, Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). The undersigned referred the Motion to the Magistrate Judge who issued a Report and Recommendation for dismissal of Plaintiffs' constitutional claims against all parties with prejudice and dismissal of the Amended Complaint without prejudice.

## II.     LEGAL STANDARD

### A.     Magistrate Review

A district court may assign dispositive motions to a magistrate judge, in which case the magistrate judge may submit to the district judge only a report and recommended disposition, including any proposed findings of fact. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009). *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). "The magistrate judge's recommendation on a dispositive matter is not a final order, and the district judge makes the ultimate decision to adopt, reject, or modify it." *Schur*, 577 F.3d at 760. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). After a magistrate judge makes a report and recommendation, either party may object within fourteen days. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

Further, a judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

B.  **Federal Pleading Requirements**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A party seeking dismissal under Rule 12(b)(6)'s requirement that the complaint state a claim upon which relief can be granted bears a heavy burden. In making this determination, the court views the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true and drawing all reasonable inferences from those allegations in favor of the plaintiff. *Lee v. City of Chi.*, 330 F.3d 456, 459 (7th Cir. 2003). The plaintiff "receives the benefit of imagination" at this stage "[as] long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). Thus, a complaint should only be dismissed pursuant to Rule 12(b)(6) when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). "To withstand a Rule 12(b)(6) challenge . . . 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together,' and the question the court should ask is '*could* these things have happened, not *did* they happen.'" *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010)) (emphasis in original). Additionally, the court may not rely upon evidence and facts outside of those alleged in the complaint in ruling on a motion to dismiss.

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the

Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

The City moved to dismiss the Amended Complaint in its entirety asserting that Defendants did not seize Ms. Mancini as she was an innocent bystander unintentionally injured, therefore her substantive due process, excessive force, and *Monell* claims fail. The City argued in the alternative that the Officer Defendants are entitled to qualified immunity. The Magistrate Judge suggested in his recommendation that the motion should be granted in its entirety. Plaintiffs object to a majority of the Magistrate Judge's recommendations as described in the discussion that follows.

#### A. Uncontested Dismissal of Certain Parties

Plaintiffs only contest dismissal of their claims against the unnamed Officer Defendants and the City. They do not object to the Magistrate Judge's recommendation of dismissal in favor of the following Defendants: IMPD as an entity, the Officer Defendants in their official capacities, Rick Hite in his official capacity, and all named police officers in their individual and official capacities. Accordingly, the Court **adopts** this portion of the Report and Recommendation.

**B.      Substantive Due Process**

The Magistrate Judge recommended dismissal of Plaintiffs' claims for a substantive due process violation because "the Amended Complaint does not contain a single allegation that could lead to a reasonable inference the Defendants engaged in a 'deliberate action to harm' Ms. Mancini." (Filing No. 34 at 11.)  Ms. Mancini argues that the City's general intent to effect a seizure with the knowledge that the canine was specifically trained to violently seize anyone in its path, rises to the level of conscience-shocking conduct.

The Magistrate Judge correctly relied upon Supreme Court and Seventh Circuit precedent in disposing of Ms. Mancini's Fourteenth Amendment claim.  "'To this end, for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience.'"  *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *City of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998)).  Thus, substantive due process claims are available only where a defendant engages in "deliberate action intended to harm another" that is "unjustifiable by any government interest." *Id.* at 1023.  The "conscience-shocking" standard with its intent requirement is the correct standard for police chases—on foot or otherwise—under the Fourteenth Amendment. *See, e.g.*, *Lewis*, 523 U.S. at 853–54 ("Just as a purpose to cause harm is needed for Eighth Amendment liability in a riot case, so it ought to be needed for a due process liability in a pursuit case."); *Steen*, 486 F.3d at 1023; *Bean v. Ind. Univ.*, 855, F. Supp. 2d 857, 864 (S.D. Ind. 2012) (concluding on a motion to dismiss that complaint failed to adequately allege that officer "acted with malicious or sadistic intent" in case where officer injured plaintiff while pursuing fleeing suspect on foot).

Both parties agree that Ms. Mancini was an innocent bystander and IMPD did not intentionally set out to harm her with deliberate action. The allegation that general knowledge that

the police canine is trained to violently attack and could potentially harm someone is not sufficient to prove IMPD's intent to harm Ms. Mancini under a shocks-the-conscience standard. The Court points the parties to Section III(C) of the Magistrate Judge's Report and Recommendation for a discussion of this issue.

The Magistrate Judge's conclusions regarding the violation of Plaintiffs' Fourteenth Amendment rights are correct and without error. The Court **adopts** the Report and Recommendation on this claim. Ms. Mancini's objection to the dismissal of the Fourteenth Amendment claim is **overruled**, and this claim is **dismissed with prejudice**.

C.  **Unreasonable Seizure**

The Fourth Amendment provides the right to be secure against unreasonable searches and seizures. The primary point of contention between the parties regarding Plaintiffs' Fourth Amendment claim surrounds the meaning of the words "through means intentionally applied" as defined by the Supreme Court in *Brower v. Cty. of Inyo*, 489 U.S. 593 (1989). The City contends that Plaintiffs fail to state a claim for unreasonable seizure because Ms. Mancini was never "seized." The City argues that one is seized under the meaning of the Fourth Amendment where an actor directs an action at a specific person, that is, where the actor intends the resulting consequence. Ms. Mancini advances the interpretation that "intentionally applied" refers to a volitional act directed at any person.

The Magistrate Judge resolved the dispute in favor of the City's interpretation, relying on *Bublitz v. Cottey*, 327 F.3d 485, 489 (7th Cir. 2003). However, as the Supreme Court noted,

> Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs when an *unintended* person or thing is the object of the detention or taking . . . but the detention or taking itself must be willful. This is implicit in the word "seizure," which can hardly be applied to an unknowing act.

*Brower*, 489 U.S. at 596 (citations omitted) (emphasis added).

7

The Supreme Court in *Brower* explained under what circumstances the government's termination of freedom of movement would be construed to be "through means intentionally applied." *Brower* distinguished between two scenarios where a parked and unoccupied police car slips its brake and pins a passerby against a wall and a police car that pulled alongside a fleeing car, sideswiped it, and produced a crash. *Id.* In both scenarios, the results were unintended, however, in the latter scenario, a seizure occurred when the police officer intentionally sideswiped the car, which effectively terminated the fleeing car resulting in a seizure. *Id.*

> We think it enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result. It was enough here, therefore, that according to the allegations of the complaint, Brower was meant to be stopped by the physical obstacle of the roadblock—and that he was so stopped.

*Id.* at 599. The City misinterprets *Brower* to require the government to intend to specifically terminate Ms. Mancini's movement; however, *Brower* only requires that the seizure results from intentional actions, not accidental. *Id.*

The Seventh Circuit's holding in *Bublitz* is not inconsistent with *Brower*. Moreover, *Bublitz* is distinguishable from the case at bar. In *Bublitz*, the Seventh Circuit held that the police did not seize plaintiffs when they were hit by a suspect vehicle that crashed due to the officers' intentional deployment of a spike system to end a high-speed chase.

> The police officers involved in the high-speed pursuit of Kevin James did not intentionally apply *any* means in an attempt to terminate the freedom of movement of the Bublitz family—the unfortunate collision between James and the Bublitzes was not a means intended by police to stop the family, but rather an unintended consequence of an attempt to seize James.

*Bublitz*, 327 F.3d at 489 (emphasis in original). The court expressly rejected transferring intent to seize the suspect to apply to the Bublitzes. *Id.* The City asserts that the Seventh Circuit's rejection of the transferred intent argument defeats Ms. Mancini's claim, which is based on a transferred intent theory. Ms. Mancini responds that she is not making a transferred intent argument; rather,

she is making a specific intent argument. Nevertheless, *Bublitz* is distinguishable in that a third party's accidental collision caused the seizure of the Bublitzes, not an instrumentality set in motion by the police. *See id. See also*, *Brower*, 489 U.S. at 599.

Unlike *Bublitz*, IMPD intentionally set the instrumentality in motion that caused Ms. Mancini's seizure by "directing the IMPD canine" onto her property and inside of her fenced yard. Ms. Mancini alleges intent in that the IMPD canine is trained to seize the first person it sees (with the hope that the person would be the suspect); thus, the dog intentionally seized Ms. Mancini ([Filing No. 43 at 3](Filing No. 43 at 3)). At this stage in the proceedings, the Court must accept Ms. Mancini's allegations that IMPD intentionally released the canine dog to seize the first person it saw, which resulted in Ms. Mancini's seizure.

Having determined that a seizure has occurred, the Court next examines if the seizure was unreasonable in violation of the Fourth Amendment. In judging whether the government's actions were reasonable, courts must balance the risks of bodily harm in apprehending a fleeing suspect that the government's actions pose in light of the threat to the public that the government is trying to eliminate. *Scott v. Harris*, 550 U.S. 372, 383 (2007). In considering this balance, the Court considers the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The Court views the circumstances "from the perspective of a reasonable officer on the scene." *Id*.

Applying the three factors identified in *Graham* demonstrates that the officers' actions were objectively unreasonable under the circumstances alleged. The alleged excessive force consists of an officer (name unknown at this time) releasing a police canine, specifically trained to violently seize the first person that it sees in the space in which he was deployed, in pursuit of

9

a minor felon, inside of a fenced residential yard; circumstances where innocent bystanders could reasonably be expected to be present. ([Filing No. 11 at 8](#)–9). These actions certainly could be viewed as unreasonable.

At this stage in the proceedings, the Court is not privy to IMPD's policy on the use of police dogs on minor felons; however, Ms. Mancini alleges that IMPD has a custom and practice of misusing police dogs, including in instances of excessive force. *Id.* at 9. Unlike in *Bublitz*, where the officer was in pursuit of a fleeing armed robbery suspect, on July 16, 2015, IMPD pursued a suspect following a traffic stop and that suspect was eventually arrested, charged, and convicted of a Class A Misdemeanor, Resisting Law Enforcement ([Filing No. 11 at 4](#)). Ms. Mancini's claim that it was objectively unreasonable for IMPD to release a police canine in a residential area (and inside of a fenced yard) in pursuit of a minor felon survives the initial hurdle of a motion to dismiss. Accordingly, the Court **sustains** Ms. Mancini's objection as to her Fourth Amendment claim, and the Motion to Dismiss on this claim is **denied**.

**D.** *Monell* **Claim**

Count Two of the Amended Complaint alleges that the City maintains a policy, custom, or practice regarding the use of IMPD canines that subjects people to the excessive use of force by allowing the improper use of IMPD canines—a form of deadly force to pursue a minor felon in circumstances where innocent third parties or bystanders could reasonably be expected to be present—and failure to properly train, supervise, and control the IMPD Officers regarding the proper use of IMPD canines ([Filing No. 11 at 8](#)–9). The Defendants argue, despite Plaintiffs' allegation, there is no evidence that Ms. Mancini suffered a constitutional deprivation due to an official policy or custom.

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy

or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

An underlying constitutional claim "is a necessary element of a *Monell* claim." *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016).

Therefore, a 'municipality is only responsible for its employees' actions if taken pursuant to an unconstitutional policy or custom of the municipality itself' or when a 'valid policy is unconstitutionally applied by a municipal employee' who has not been adequately trained and the constitutional wrong has been caused by that failure to train.

*Roddy v. Canine Officer*, 293 F. Supp. 2d 906, 914 (S.D. Ind. 2003) (quoting *Garrison v. Burke*, 165 F.3d 565, 571 (7th Cir. 1991)) (also quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989)). Ms. Mancini has sufficiently pled a Fourth Amendment claim and as she alleges the City's policy regarding the use of and failure to train IMPD canines and their handlers has subjected other individuals in addition to Ms. Mancini to excessive use of force in violation of their constitutional rights ([Filing No. 11 at 8](#)–9). The Amended Complaint also alleges that IMPD's practice or policy of using the canine officers in pursuit of minor felons is excessive deadly force that is unconstitutional. Thus, the Court **sustains** Ms. Mancini's objection regarding the *Monell* claim, and the City's Motion to Dismiss this claim is **denied**.

### E. Qualified Immunity

The City asserts that, in the alternative to an adjudication of the constitutional claims on the merits, the individual Defendants are entitled to qualified immunity regarding the constitutional claims. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982). "The question is whether a reasonable state actor would have known that his actions, viewed in the light of the law at the time, were unlawful." *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 356 (7th Cir. 2005) (quoting *Nabozny v. Podlesny*, 92 F.3d 446, 456 (7th Cir. 1996)).

To determine whether qualified immunity applies, the Court must determine whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court also determines "whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*

1. **Violation of a Constitutional Right**

As discussed above, taking the facts in a light most favorable to Ms. Mancini, she has sufficiently pled an alleged excessive force claim under the Fourth Amendment. "A police officer's use of force is unconstitutional if, judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003) (citation and quotation marks omitted). "The inquiry is fact specific and balances the intrusion on the individual against the governmental interests at stake." *Id.* The City argues that Ms. Mancini's excessive force claim fails under a transferred-intent theory; however, this is misplaced, as the police officer's use of force in effecting arrest on a fleeing felon is inextricably intertwined with assessing the threat to public safety the suspect poses and how the use of such force could potentially harm innocent bystanders. "[T]he City's policy allows for police dog use in the presence of innocent bystanders when the officer determines that the benefit of apprehending the forcible felony suspect outweighs the risk of potential harm to the bystander." *Roddy*, 293 F. Supp. 2d at 916. Again, Ms. Mancini responds

that she is not making a transferred-intent argument; rather, she argues the City had the specific intent to seize Ms. Mancini because the police dogs are trained to attack and hold the first person they come across. ([Filing No. 43 at 2](#)). As such, Ms. Mancini sufficiently pleads a claim that her Fourth Amendment rights were violated by releasing a dog (that is trained to bite and hold the first person it comes across) into a fenced yard in a residential neighborhood and that this was excessive force and an unlawful seizure in light of any threat of a fleeing suspected minor felon under the totality of the circumstances.

### 2. Clearly Established Right

Ms. Mancini's rights also must be clearly established. "To be clearly established, at the time of the challenged conduct, the right's contours must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Humphries v. Milwaukee Cnty.*, 702 F.3d 1003, 1006 (7th Cir. 2012) (citation and quotation marks omitted).

In the context of a claim for excessive force, "there is no doubt that [case law] clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Saucier*, 533 U.S. at 201–02. "While a case directly on point is not required, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citation and quotation marks omitted). "A case directly on point is not required for a right to be clearly established and officials can still be on notice that their conduct violates established law even in novel circumstances." *Becker v. Elfreich*, 821 F.3d 920, 929 (7th Cir. 2016) (in defeating a qualified immunity defense, "relevant case law did not need to involve [an analogous] police dog in order to clearly establish the principle that you cannot allow a dog to violently attack such a suspect").

The City argues that Ms. Mancini cannot overcome qualified immunity because she cannot point to any analogous case "clearly establishing a bystander's constitutional right to be free from

dog bites during a police dog's pursuing of a fleeing felon." (Filing No. 13 at 6.) In response, Ms. Mancini points to three bodies of authority to show that she had clearly established constitutional rights at the time of the mauling (Filing No. 21 at 12). These arguments fall into two categories with some overlap. First, Ms. Mancini argues a general proposition that, "[s]ince the adoption of the Bill of Rights, people in America have enjoyed the protections to be free of unreasonable searches and seizures." *Id.* at 13. Second, Ms. Mancini provides analogous cases specifically regarding excessive force in dog bite cases. However, these cases do not clearly establish her constitutional right specifically to be free from dog bites during a police dog's pursuit of a fleeing felon for two reasons. First, Ms. Mancini points to two persuasive cases outside of this circuit, but they are not precedential authority. Second, Ms. Mancini points to the *Pastore* case, but this case was decided after the events giving rise to Ms. Mancini's claim, and it cannot be used to establish that, at the time that Ms. Mancini was seized in 2015, the law was clearly established that the use of dogs could form a basis for an excessive force claim. Nevertheless, "it was of course clearly established that a police officer may not use excessive force in arresting an individual," *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir. 2001), and that "a case directly on point is not required for a right to be clearly established." *Phillips v. Community Ins. Corp.*, 678 F.3d 513, 528 (7th Cir. 2012). "[F]orce is reasonable only when exercised in proportion to the threat posed." *Id*. at 529. Ms. Mancini argues that an analogous case is not required to show that clearly established constitutional rights existed at the time of the incident, and IMPD should have known that its release of a dog trained to seize and detain the first person it came in contact with into a residential neighborhood was an unreasonable use of force in pursuing a minor felon (Filing No. 21 at 13).

14

Taking the allegations in the Amended Complaint as true that IMPD unreasonably used a police dog (allegedly a form of deadly force), trained to bite and hold the first person it came across, in pursuit of a minor fleeing felon suspected of a traffic offense, it is clearly established that excessive (or deadly) force is prohibited in apprehending a fleeing misdemeanant. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985). *Cf. Mason v. Hamilton County*, 13 F. Supp. 2d 829, 834 (S.D. Ind. 1998) ("In fact, the published court decisions upholding the use of dogs to apprehend suspects by biting and holding them virtually all involved fleeing or hiding subjects who were suspected of violent crimes such as robbery, or at least more serious thefts than the one at issue here, and where there usually was at least some evidence of danger to police officers or others."). Because an analogous case is not required to show that clearly established constitutional rights existed, and Ms. Mancini has asserted factual allegations, which if true, show that a reasonable officer would have known that deployment of the police dog under the totality of the circumstances was excessive force, the City is no shielded by qualified immunity with respect to Plaintiffs' claim of excessive force. Therefore, the Court **sustains** the objection to the Report and Recommendation on the City's qualified immunity claim. Thus, the City's Motion to Dismiss on this basis is **denied**.

## IV. <u>CONCLUSION</u>

A motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). For the reasons set forth above, Ms. Mancini's Objection to Magistrate's Report and Recommendation ([Filing No. 43](#)) regarding the City's Motion to Dismiss is **SUSTAINED in part** and **OVERRULED in part**. The Motion to Dismiss ([Filing No. 12](#)) is **GRANTED in part** and **DENIED in part.** Defendants IMPD, Officer Defendants in their official

capacities, Rick Hite, and all named police officers in their individual and official capacities are **DISMISSED with prejudice.** Ms. Mancini's Fourteenth Amendment claim against all Defendants is **DISMISSED with prejudice.** The remaining claims for trial in this case are the Fourth Amendment claim, pursuant to 42 U.S.C. § 1983 under Count I, and the *Monell* claim under Count II.

**SO ORDERED.**

Date: 9/26/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ard@rucklaw.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
jfk@rucklaw.com

Jonathan Charles Little
SAEED & LITTLE, LLP
jon@sllawfirm.com

Edward J. Merchant
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ejm@rucklaw.com

David E. Miller
SAEED & LITTLE
david@sllawfirm.com

Thomas J.O. Moore
OFFICE OF CORPORATION COUNSEL
thomas.moore@indy.gov

Donald Eugene Morgan
OFFICE OF CORPORATION COUNSEL
donald.morgan@indy.gov